James M. O'NEILL and The Store at Oak Beach, Inc., Appellees,

v.

TOWN OF BABYLON, Defendant,

Ronald Tolkin and James Hassan, Appellants.

No. 894, Docket 92–7991.

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1993.

Decided Feb. 16, 1993.

Linda U. Margolin, Islandia, NY (John K. Diviney, and Bracken & Margolin, on the brief), for appellants.

Myra Rochelson, Commack, NY (Robert C. Gottlieb, on the brief), for appellees.

Before: TIMBERS, WALKER, and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

Ronald Tolkin, a bay constable, appeals from orders entered after trial in the Eastern District of New York, Leonard D. Wexler, *District Judge*, denying his motions, pursuant to Fed.R.Civ.P. 50(a) & (b), for judgment as a matter of law in an action commenced under 42 U.S.C. § 1983 (1988). On appeal, Tolkin as the sole appellant contends that the court erred in denying his motions because he is entitled to qualified immunity as a matter of law. We hold that Tolkin is entitled to qualified immunity as a matter of law. We therefore reverse and remand to the district court with instructions to dismiss the action against Tolkin.

### I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Appellee James M. O'Neill and his wife are the owners of The Store at Oak Beach, Inc. (the store), a general food and supply store operating on land leased to the O'Neills by the Town of Babylon (the town), Suffolk County, New York. The store is adjacent to and shares a parking lot with the Oak Beach Inn, an ocean-front bar and restaurant. In early 1987, O'Neill and the town became engaged in a dispute regarding the fence and gate along the western border of the store which was situated between the store and a public parking field. Pursuant to the lease agreement with the town, the gate to the fence was closed each evening from 7:00 p.m. to 6:00 a.m. This restriction severely limited access to the store, resulting in a predictable loss in business. The town asserted that the restriction was necessary to promote public safety. On March 15, 1987, O'Neill removed the gate without the town's approval. The town protested and assigned bay constables to monitor the now-open gate from 7:00 p.m. to 6:00 a.m. Soon thereafter, an action to evict O'Neill was commenced by the town in the Suffolk County Supreme Court. The town contended that, by removing the gate, O'Neill materially breached the terms of the lease.

On June 20, 1987, while the eviction action was pending, Tolkin and Public Safety Officer James Hassan were monitoring the open gate. At approximately 7:00 p.m., O'Neill approached the gate in his truck and collided with Tolkin's law enforcement vehicle. When Tolkin and Hassan attempted to apprehend O'Neill, O'Neill resisted and a scuffle ensued. O'Neill was arrested and charged with criminal mischief and resisting arrest. At trial in the Suffolk County District Court, the resisting arrest charge was dismissed and the jury found O'Neill not guilty of criminal mischief.

On June 24, 1987, without the town's approval, O'Neill removed the fence. The town then set up a traffic control barricade where the fence formerly stood. The barricade was composed of vehicles, tow trucks, and wooden police barricades. Later that evening, at approximately 11:00 p.m., O'Neill drove to the barricade. He got out of his truck, picked up a wooden barricade and threw it against an adjacent building, causing it to break apart. O'Neill then got back into his truck and drove through the remaining barricade. In so doing, O'Neill backed up his truck towards Tolkin, allegedly tapping him with the bumper. O'Neill then got out of his truck, removed more barriers and signaled for other cars to cross the barricade and park. O'Neill was arrested by Tolkin and charged with obstruction of justice, criminal mischief, and reckless endangerment. The charges stemming from this arrest, however, subsequently were dismissed in the Suffolk County District Court "in the interest of justice."

The town's action to evict O'Neill was dismissed on September 21, 1987. Subsequently, on June 7, 1988, O'Neill commenced the instant action against the town, the Town Supervisor, the Town Board, Tolkin, and Hassan. O'Neill's complaint alleged a violation of his civil rights under 42 U.S.C. §§ 1982 and 1983 (1988) and pendent state law claims. Specifically, O'Neill alleged that the town and its officials harassed him in an effort to drive him out of business. O'Neill also asserted claims of false arrest, malicious prosecution and excessive force against Tolkin and Hassan

arising from his June 20, 1987 arrest. Finally, O'Neill asserted claims of false arrest and malicious prosecution against Tolkin and the town arising from his second arrest on June 24, 1987.

Tolkin and Hassan moved for summary judgment, asserting that they were entitled to qualified immunity with respect to the arrests of O'Neill. The court denied their motion on August 20, 1990. Tolkin and Hassan appealed, but we dismissed the appeal on September 6, 1990 because it was not perfected. The case proceeded to trial. At the close of O'Neill's case-in-chief, Tolkin and Hassan moved pursuant to Fed. R.Civ.P. 50(a) for judgment as a matter of law. The court granted this motion with respect to the false arrest and malicious prosecution claims arising from the June 20 arrest, but denied the motion with respect to the excessive force claim arising from the June 20 arrest and the claims against Tolkin and the town arising from the June 24 arrest.

The jury returned a verdict in favor of Tolkin and Hassan on the excessive force claim arising from the June 20 arrest. The jury also returned a verdict in favor of Tolkin with respect to the false arrest claim arising from the June 24 arrest. The jury, however, returned a verdict in favor of O'Neill on the malicious prosecution claim. It found that, although Tolkin had probable cause to arrest O'Neill on June 24, he nevertheless maliciously prosecuted O'Neill. The jury awarded O'Neill $5,000 in compensatory damages and $5,000 in punitive damages.

Tolkin renewed his motions pursuant to Fed.R.Civ.P. 50(b) for judgment as a matter of law or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. On April 23, 1992, the court denied Tolkin's motion for judgment as a matter of law but granted his motion for a new trial on the ground that the jury's findings of probable cause and malicious prosecution were irreconcilable.

On appeal, Tolkin challenges the court's denial of his Rule 50 motions. He claims that he is entitled to qualified immunity as

a matter of law, and therefore the court improperly denied these motions. We agree. For the reasons set forth below, we reverse the orders of the court and remand the case with instructions to dismiss the claims against Tolkin arising from the June 24 arrest.

## II.

### (A) *Jurisdiction Under 28 U.S.C. § 1291 (1988)*

■ As a threshold matter, O'Neill claims that we lack jurisdiction to hear the instant appeal under 28 U.S.C. § 1291 (1988). This claim lacks merit. *Mitchell v. Forsyth*, 472 U.S. 511 (1985). In *Mitchell*, the Court held that appellate courts have jurisdiction under § 1291 to hear an otherwise interlocutory appeal from a district court's denial of a qualified immunity defense so long as the inquiry turns "on an issue of law." *Id.* at 530. Despite the absence of a final order, appellate jurisdiction is conferred in cases involving qualified immunity to protect government officials not only from liability for their actions but from the cost and inconvenience of having to defend an action through trial. *Cartier v. Lussier*, 955 F.2d 841, 844 (2 Cir.1992) (stressing that without appellate jurisdiction "insulation from meritless litigation would be lost.").

■ Jurisdiction, however, is limited to circumstances where the qualified immunity defense may be established as a matter of law and "is not available where the immunity issue turns on disputed questions of fact." *White v. Frank*, 855 F.2d 956, 958 (2 Cir.1988). Indeed, we lack jurisdiction when the determination of material factual issues is "a necessary predicate" to a resolution of whether qualified immunity is a bar to the litigation. *Cartier, supra,* 955 F.2d at 844; *see also White, supra,* 855 F.2d at 962 (appeal from summary judgment denying qualified immunity defense dismissed on ground that court lacked jurisdiction because "further exploration" was necessary to resolve issue as a matter of law).

O'Neill contends that, since the instant question of qualified immunity necessarily hinges on disputed issues of fact, we lack jurisdiction to review the denial of Tolkin's motions for judgment as a matter of law. O'Neill further contends that these factual issues cannot be resolved until after a new trial, and that jurisdiction should be postponed until then.

■ O'Neill's contention overlooks the procedural posture of the instant action. Here, unlike a situation where unresolved factual issues prevent an early disposition of the case on summary judgment, there has been a significant amount of pre-trial discovery and a full trial. Both Tolkin and O'Neill have been subject to direct and cross examination regarding the June 24 arrest. As far as the discrete question of immunity is concerned, all material issues of fact concerning Tolkin's arrest of O'Neill have been fleshed out at trial. A further factual inquiry is not necessary to resolve the question of qualified immunity as a matter of law. *Finnegan v. Fountain*, 915 F.2d 817, 821 (2 Cir.1990) (once questions of fact concerning the arrest are established, the issue of whether immunity attaches is a question of law).

We hold that we have jurisdiction to hear the instant appeal because the issue of qualified immunity can be resolved as a matter of law.

### (B) *Qualified Immunity*

Tolkin claims that the court erred in denying his Rule 50 motions. In support of this claim, he asserts that he was entitled to qualified immunity and the court should have held as a matter of law that he acted reasonably in arresting O'Neill on June 24.

■ A police officer is entitled to qualified immunity if at the time of the challenged arrest it was objectively reasonable for him to believe his actions were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Where, as here, in a § 1983 action for damages based on malicious prosecution, an arresting officer is entitled to qualified immunity if "(a) it was objectively reasonable for the officer to believe that

probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2 Cir.1991), *cert. denied,* 112 S.Ct. 3032 (1992). There is probable cause when the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2 Cir.1989). Of significance on the instant appeal is whether, based on information available to him at the time of the arrest, Tolkin had probable cause to believe that O'Neill had committed an offense in his presence on June 24, or, in the alternative, whether competent, reasonable officers would disagree as to whether probable cause existed.

After his arrest on June 24, O'Neill was charged, among other things, with criminal mischief in the fourth degree, pursuant to N.Y.Penal Law § 145.00 (McKinney 1988). Section 145.00 provides that "[a] person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he has such a right, he: (1) Intentionally damages property of another...."

Based on the undisputed trial testimony of Tolkin, O'Neill, and Officer John Flynn, it was objectively reasonable for Tolkin to believe that O'Neill intentionally damaged barricades belonging to the town and therefore violated § 145.00. Tolkin testified that he observed O'Neill "picking [the barricades] up like they were toothpicks and throwing them to the north side of ... The Store." Flynn testified that O'Neill was "throwing barriers about." Further, Tolkin and Flynn both testified that they witnessed O'Neill drive over the remaining barricades and tap Tolkin with the bumper of his truck. Similarly, on cross examination, O'Neill confirmed that, in a deposition taken on October 17, 1989, he testified as follows: "So all I did was pick [the barricade] up, move it over and

throw it against the building, the pieces fell apart...." O'Neill also conceded that he had driven his car through the remaining barricades and encouraged others to follow him.

Based on these undisputed facts, we conclude that there was probable cause, and therefore it was objectively reasonable, as a matter of law, for Tolkin to believe that O'Neill intentionally destroyed town property. At a minimum, reasonable police officers could disagree on whether there was probable cause after viewing the same evidence. *Cartier, supra,* 955 F.2d at 847. In reaching this conclusion, we decline O'Neill's invitation to examine Tolkin's motives for making the arrest. *Id.* at 843 ("A subjective inquiry into an officer's personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant's position would believe."). Further, since we look only at the information the arresting officer had at the time of the arrest, *Anderson, supra,* 483 U.S. at 641 O'Neill's claim that Sergeant O'Hara gave him permission to remove the barricades is irrelevant since Tolkin was not present during this alleged conversation and therefore did not have this information when he arrested O'Neill.

We hold that, since Tolkin acted reasonably in believing that he had probable cause to make an arrest pursuant to § 145.-00, he is entitled to qualified immunity as a matter of law.

### III.

To summarize:

We hold that we have jurisdiction under § 1291 because there are no outstanding factual issues which must be resolved in order to decide whether Tolkin had qualified immunity. In examining the merits of Tolkin's claim, we hold that he is entitled to qualified immunity as a matter of law because it was reasonable for him to believe that he had probable cause to arrest O'Neill on June 24. The court erred in denying Tolkin's Rule 50 motions for judgment as a matter of law.

Reversed and remanded to the district court with instructions to dismiss the action against Tolkin.