Richard J. OWENS, Plaintiff,

v.

Paul E. COLBURN, Town of New Hartford, Town of New Hartford Police Department, Defendants.

No. 92–CV–1019.

United States District Court, N.D. New York.

July 26, 1994.

Joseph B. Pachura, Jr., Utica, NY, for plaintiff.

Kernan & Kernan Law Firm (Steven A. Smith, of counsel), Utica, NY, for defendants.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Richard J. Owens, seeks compensatory and punitive damages for violations of 42 U.S.C. §§ 1981, 1983, 1988, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. The claims arise from plaintiff's arrest on May 11, 1991, for several traffic violations, including driving while intoxicated. The Defendants have moved for summary judgment on all counts of the complaint pursuant to Fed. R.Civ.P. 56. The plaintiff opposes the motion. Oral argument was heard on July 14, 1994. For the reasons discussed below, the motion is granted.

### II. FACTS

The court has gleaned the facts from the sworn deposition testimony of both parties. Although the two versions of the incident conflict at times, the court views the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff suffers from a work related injury. In 1979, he sustained soft tissue damage which has resulted in cervical degenerative disc disease/radiculopathy. At the time of this incident he was retired, occupationally disabled, and lacking the range of motion of an average person.

On May 11, 1991, defendant Paul E. Colburn ("Colburn") was a uniformed police officer ("officer") employed by the Town of New Hartford. On that day, he was assigned to the 11:00 P.M.–7:00 A.M. shift working as a motor patrol. At approximately 2:04 A.M., he observed a blue Chevrolet Suburban proceeding east on Route 5 in the vicinity of Genesee Street in the Town of New Hartford, New York. The suburban was owned and operated by the plaintiff. He observed the vehicle approach the Genesee Street/State Route 12 intersection at a high rate of speed. When the stop light changed to red, plaintiff was forced to bring his vehicle to a sudden, abrupt stop. His vehicle came to rest ahead of the stop line at the intersection.

Colburn pulled up behind plaintiff's vehicle at the stop light. When the light changed, plaintiff proceeded north on State Route 12 at a high rate of speed. Colburn followed and clocked plaintiff's vehicle at 75 miles per hour in a 55 m.p.h. zone. Plaintiff's vehicle also swerved across the driving lane, crossing and straddling the pavement markings for the passing lane of Route 12. Colburn followed plaintiff's vehicle, caught up with it, and proceeded to activate the lights on his patrol car. Plaintiff failed to stop. When Colburn turned on the siren, plaintiff finally pulled over. This was apparently the first point at which the plaintiff noticed the patrol car.

The officer spoke with plaintiff as he sat in his vehicle. Two other individuals were also present in plaintiff's vehicle. During questioning, plaintiff stated that his speedometer was broken and that he was unaware that he had exceeded the speed limit.[1] The officer detected the smell of alcohol, slurred speech, and glassy/bloodshot eyes; observations which plaintiff does not contest. After fur-

ther questioning, plaintiff admitted that he was on his way from a local bar and that he was driving to another bar/restaurant in Utica, New York. Plaintiff has since admitted that he drank three to four draft beers and one shot of whiskey during the course of the evening, and that he spent the entire evening (since 7:30 P.M.) at three bars in the Utica–Kirkland–New Hartford area.

Colburn asked plaintiff to exit his vehicle and to perform field sobriety tests. Plaintiff maintains that his performance was satisfactory on all the field tests and that he was sober at the time of his arrest. The officer was of the opinion, however, that plaintiff slurred the alphabet, was unable to stand on one foot for five seconds, was incapable of walking a straight line, and failed to touch his finger to his nose with his eyes closed. Colburn believed that plaintiff was intoxicated, and advised plaintiff that he was under arrest for driving under the influence of alcohol and for other traffic violations.

At that point, Colburn applied handcuffs to plaintiff's wrists. In the process of being handcuffed, plaintiff claims that his hands were pulled "severely and abruptly" behind him, aggravating his pre-existing spinal condition. Plaintiff was then placed in the rear passenger seat of the patrol car. While plaintiff was sitting in the vehicle, Colburn proceeded to administer an alco-sensor test, a test which indicated a blood alcohol content of .15. Plaintiff maintains that the result was tainted because the test was administered within 15 minutes from the time of the stop. He claims that fifteen minutes are needed to clear mouth alcohol.[2]

Plaintiff was transported to the New Hartford police station via four lane highways (State Routes 12 and 8). It is undisputed that the ride to the station lasted less than ten minutes and that at no time during the ride did plaintiff complain of any pain or injury. Plaintiff does claim, however, that he was never secured with a seat belt and that the officer drove the patrol car "in an erratic and excessive fashion," causing him to be "rocked back and forth with [his] hands

---

1. Plaintiff's speedometer was, in fact, broken.

2. At his sworn deposition, plaintiff admitted that he could not recall taking the alco-sensor test.

cuffed behind [him]." Plaintiff alleges that defendant's driving and the failure to secure the seat belt also aggravated his pre-existing condition.

After arriving at the police station, plaintiff's handcuffs were removed. At that time, no mark, bruise or other evidence of injury was present on plaintiff's wrists or body. While in police custody, plaintiff made no complaints of any injuries resulting from the handcuffs or the handcuffing. Plaintiff also made no complaints about any injuries sustained during the ride to the station. These facts are all uncontested.

At the station, plaintiff made a call to his lawyer and consented to a second breathalyzer test. The results indicated a blood alcohol reading of .16. Plaintiff was interviewed and Colburn filed a physical condition report. The record shows that plaintiff swayed back and forth, was hampered in his ability to walk, and slurred his speech during his stay at the police station. The officer also noted trembling hands, a flushed face, and glassy/watery eyes. When asked at the station whether he was ill or injured, plaintiff answered "no" to both questions. Plaintiff does point out, however, that no one ever specifically asked him whether he sustained injuries or wished to file a complaint regarding his treatment.

After failing the breathalyzer test, plaintiff was issued traffic tickets for driving while intoxicated, speeding, driving left of the pavement markings, and the broken speedometer. Plaintiff was never incarcerated and left the station with his friend at approximately 3:00 A.M.; less than one hour after the initial stop.

Throughout the evening, plaintiff made no complaints to police of pain or discomfort with respect to his neck, back, shoulders or arms, and never complained about the handcuffs being too tight. At no point did he inform the police that he had a pre-existing condition which might be aggravated by the use of handcuffs. In addition to not complaining of injury or illness and failing to request medical treatment, plaintiff also did not seek immediate medical treatment after his release. He visited with a physician at his regularly scheduled doctor's appointment on May 29, 1991, almost three weeks after the incident. The physician's office notes, dated May 29, 1991, mention nothing about plaintiff sustaining injuries on May 11, 1991. None of these facts are disputed.

### III. CONTENTIONS

The court has liberally construed plaintiff's lengthy list of complaints. Plaintiff seeks compensatory and punitive damages for violations of 42 U.S.C. §§ 1981, 1983, 1988, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. Plaintiff, however, only provides factual support for the following state law claims[3] and Fourth Amendment violations actionable under 42 U.S.C. § 1983[4]:

1. Arrest Without Probable Cause
2. Excessive Force
3. Denial of Medical Treatment/Deliberate Indifference
4. Malicious prosecution

---

**3.** Plaintiff's complaint may actually raise numerous state law tort claims. As plaintiff and all defendants are New York residents, the court has no diversity jurisdiction over these potential claims. Since the court's exercise of pendent jurisdiction is discretionary, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and since the court will dismiss plaintiff's federal claims, it refuses to exercise pendent jurisdiction in this matter. *See id.*

**4.** Plaintiff's allegations simply do not implicate 42 U.S.C. §§ 1981 and 1988. "The *sine qua non* of a complaint under § 1981 is a showing of racial discrimination." *Roundtree v. New York*, 778 F.Supp. 614, 617 (E.D.N.Y.1991) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88

S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). The plaintiff here has made no allegation of racial discrimination; as such, his § 1981 claim must be dismissed. *See Maida v. Andros*, 710 F.Supp. 524, 529 (D.N.J.1988).

Likewise, 42 U.S.C. § 1988 does not provide a cause of action. It governs actions or proceedings brought to enforce other civil rights provisions (e.g. §§ 1981 or 1983).

Having determined that plaintiff's case arises solely under 42 U.S.C. § 1983, the court begins its analysis "by identifying the specific constitutional [r]ights allegedly infringed by the challenged" conduct. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989).

5. Actions pursuant to an unconstitutional *de facto* policy of the Town of New Hartford Police Department

## IV. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact," *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991), and the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

"In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party." *Lang*, 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* The court's function "is not ... to weigh the evidence and determine the truth of the matter," *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511, but "to determine whether there does indeed exist a genuine issue for trial." *Id.*

## V. DISCUSSION

### A. Arrest Without Probable Cause

Plaintiff argues that his rights to be free from false arrest and false imprisonment were violated as a result of the defendants' actions on May 11, 1991. The crux of the allegation is that he was not intoxicated at the time of his arrest and that Colburn lacked probable cause for the arrest. Defendants contend that they are entitled to qualified immunity as a matter of law and that summary judgment should be granted on this count.

No cause of action exists for an alleged violation of civil rights where an arrest is supported by probable cause. *O'Neill v. Babylon*, 986 F.2d 646, 649 (2d Cir.1993). "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "There is probable cause when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill*, 986 F.2d at 650 (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989)). The court looks only to the information that the arresting officer had at the time of the arrest. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

■ Based on the undisputed facts, there was more than ample probable cause for the stop of plaintiff's vehicle. Colburn noticed the vehicle at 2:04 in the morning when it came to an abrupt halt beyond the stop line at a stop light. He tailed the vehicle and noted that it swerved from side to side and crossed the pavement markings. As the vehicle picked up speed, Colburn clocked it on his radar at 75 miles per hour; well above the fifty-five mile an hour limit. After catching up to the speeding vehicle, the officer turned on the lights to alert the driver of his presence. Though the lights from the patrol car would be clearly visible during the dark morning hours, the driver of the vehicle continued without slowing down. The officer

turned on his siren, at which point the vehicle pulled over and came to a stop. Based upon these undisputed facts, there was ample probable cause for the stop of plaintiff's vehicle.

▮ Probable cause also existed for the arrest. As the officer approached the driver of the vehicle, and throughout the discourse that followed, he noticed slurred speech, glassy/bloodshot eyes, and a distinct odor of alcohol emanating from the car. In response to questioning, plaintiff admitted that he was coming from a local bar and was on his way to another bar/restaurant. He also admitted to having consumed a few drinks during the course of the evening. Based upon plaintiff's driving, his apparent condition, and the answers to his inquiries, Colburn was more than justified in going forward with the standard tests for intoxication.

Colburn proceeded to administer standard field sobriety tests. Plaintiff claims that his performance on the field tests were "satisfactory." It is undisputed, however, that the officer believed that there was enough evidence of intoxication to proceed with an arrest. His determination was supported by an alco-sensor test which indicated a blood alcohol content of .15. Although plaintiff complains that this alco-sensor test was administered prematurely, whether the test was, in fact, premature is of little significance in the context of the surrounding circumstances. The .15 reading coupled with the erratic driving, the performance on the field tests, the slurred speech, and the admissions from plaintiff himself that he consumed alcohol over the course of the evening, amounted to enough "reasonable and trustworthy information" for bringing plaintiff into the station and removing him from the road.

Even when viewing the evidence in the light most favorable to the plaintiff, probable cause is established. Plaintiff's own deposition testimony supports a finding that probable cause existed for his DWI arrest. Plaintiff has presented no evidence from which a reasonable juror could find that the Colburn lacked probable cause. Based on the undisputed facts, the court concludes that there was ample probable cause for the stop and arrest, and that it was objectively reasonable, as a matter of law, for the officer to believe that plaintiff was driving under the influence of alcohol.

The court holds that defendants have met their burden of establishing the lack of a genuine issue of material fact and summary judgement is granted on this count. The court's decision on the merits of the probable cause claim renders moot the issue of qualified immunity.[5]

### B. Excessive Force

▮ Plaintiff alleges that, without just cause or reason, Colburn used excessive force during and following the arrest. Plaintiff argues that handcuffing and having his arms "jerked" behind him amounts to a Fourth Amendment Constitutional claim of excessive force. He also brings an excessive force claim for Colburn's failure to engage the seat belt in the back of the squad car. Defendants contend that, even if the court were to accept plaintiff's version of the facts as true, there would be no constitutional issue. They also argue that Colburn is again entitled to qualified immunity protection as a matter of law.

▮ The court will not entertain the qualified immunity defense in the context of an

---

5. "Public officials are entitled to qualified immunity from liability for civil damages ... as long as their conduct does not violate a clearly established statutory or constitutional right." *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Officials can also receive this protection if they establish that it was objectively reasonable to believe that their acts did not violate clearly established rights. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir. 1993). The qualified immunity standard applies

to probable cause. "When reasonable officers could disagree as to whether probable cause exists, the immunity defense is available." *Cartier v. Lussier,* 955 F.2d 841, 846 (2d Cir.1992); *O'Neill,* 986 F.2d at 649–50; *see also Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040.

A reasonable police officer in Colburn's position would have found probable cause for the stop and the arrest of the plaintiff. If the court was required to approach the issue of qualified immunity in this action, officer Colburn would be entitled to its defense.

excessive force claim.[6] However, the reasonableness of Colburn's actions must still be reviewed in analyzing the substantive questions of the excessive force claim. The court bases its decision solely on the merits of the excessive force claim and finds that a reasonable police officer would have understood the actions of Colburn to be lawful, especially given the fact that he had no notice of plaintiff's pre-existing injury.

■ A claim of excessive force invokes the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). The issue, again, is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him. *Id.* at 397, 109 S.Ct. at 1872. The test of "reasonableness" is not capable of precise definition or mechanical application; therefore, careful attention must be paid to the facts and circumstances of the case. *Id.* at 396, 109 S.Ct. at 1871–72. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973), *cert.*

denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

In this case, the facts are undisputed as to Colburn's lack of knowledge of plaintiff's preexisting back injury. According to plaintiff's own deposition, he never informed the officer of his condition, he never complained of the fact that the handcuffs were hurting him, he never exhibited any sign of trauma during the cuffing or the brief incarceration, and he never gave any indication whatsoever that he was in pain or uncomfortable. Although plaintiff's counsel submits that it would have been "gentlemanly" of Colburn to have asked the plaintiff if his physical condition allowed for handcuffing, such a solicitation has never been required of law enforcement personnel. The officer's application of handcuffs and the allegations of pain that resulted do not rise to the level of a constitutional violation, especially given the absence of visible injuries, complaints, or requests for medical treatment. "[N]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares v. Connecticut*, 8 F.3d 917, 922 (2d Cir.1993).

The court notes that the Sixth Circuit has denied summary judgment on a handcuffing

---

**6.** The court recognizes the absence of a distinction between the second prong of the defense of qualified immunity and the substantive law of an excessive force claim. *See, e.g., Ford v. Retter*, 840 F.Supp. 489 (N.D.Ohio 1993) ("[T]he determination of qualified immunity turns on the same objective reasonableness standard that the claim of excessive force turns on....") (quoting *Jackson v. Hoylman*, 89–CV–7208 at p. 5 (N.D.Ohio December 18, 1989), *aff'd* 933 F.2d 401, 402 (6th Cir.1991)); *Yates v. Cleveland*, 941 F.2d 444, 450 (6th Cir.1991) ("It seems ... that qualified immunity has no relevance unless there is excessive force, for if there is no excessive force, the officer acted in an objectively reasonable manner under the circumstances and there is no constitutional violation. It also seems that once you have determined the need for the defense of [qualified immunity], ... the officer has acted unreasonably ... and has violated clearly established law.") *see also Graham*, 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12 ("Since no claim of qualified immunity has been raised ... we express no view on its proper application in excessive force cases that arise under the Fourth Amendment.");

In *Qualified Immunity: A User's Manual*, 25 IND.L.REV. 187 (1993), Karen M. Blum also sheds light on the redundant exercise of applying the qualified immunity defense to an excessive force claim:

> Although *Anderson [v. Creighton]* makes it clear that qualified immunity is available as a defense to a Fourth Amendment claim of an unreasonable search, *Graham* leaves open the question of whether qualified immunity would apply in the excessive force case. Because the excessive force inquiry is governed by the same "objective reasonableness" standard as the qualified immunity inquiry, a number of courts and commentators have suggested that the qualified immunity defense is redundant in this context and does not apply. Those adhering to this view would frame the question on the merits and the qualified immunity question in the same way: was the official's conduct objectively reasonable given the totality of the circumstances?

*Ford*, 840 F.Supp. at 492 n. 3 (quoting *Qualified Immunity: A User's Manual*, 26 IND.L.REV. 187, 219–20 (footnotes omitted)).

claim when facts were disputed as to whether a police officer had *actual* knowledge of a plaintiff's shoulder injury before handcuffing. *Walton v. Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993). In the instant case, however, it is undisputed that Colburn had no knowledge of plaintiff's preexisting condition. Aside from *Walton,* this court finds no case law in any circuit that alludes to the unconstitutionality of the conduct complained of, let alone authority that would raise a doubt in the mind of a reasonable officer in Colburn's position. Colburn's application of handcuffs and the pain that allegedly resulted do not rise to the level of a constitutional violation in the absence of visible injuries, complaints, or requests for medical treatment. *See Foster v. Metropolitan Airports Com,* 914 F.2d 1076 (8th Cir.1990) (complaints that handcuffs were unnecessary and applied too tightly did not raise a Fourth Amendment issue); *Van Houten v. Baughman,* 663 F.Supp. 887, 891 (C.D.Ill.1987) (numbness in wrists arising from handcuffing did not arise to the level of severity as to shock the conscience of the court); *Hannula v. Lakewood,* 907 F.2d 129, 132 (10th Cir. 1990) (summary judgment granted where there was no visible evidence of contusions, lacerations or damage).

In conclusion, the court finds that plaintiff has not raised an excessive force claim. Given the absence of a clearly established constitutional or statutory right, given the undisputed fact that the officer was not on notice of plaintiff's condition, and given the undisputed fact that no reasonable officer in the Colburn's position could have known that plaintiff suffered from a condition which precluded handcuffing, Colburn acted reasonably in withholding from plaintiff a privilege which would not have been extended to other suspected intoxicated drivers. Plaintiff asks this court to "transform the constitutional wrong of excessive force in arrest into the common law tort of battery; [which] would reduce the holding in *Graham* into an empty proposition against which no use of force is reasonable as a matter of law." *Roundtree v. New York,* 778 F.Supp. 614, 622 (E.D.N.Y. 1991).

The court will also address plaintiff's allegation that he sustained further injury as the result of Colburn's driving, the fact that Colburn did not place him in a seat belt, and the cumulative effect of being "rocked back and forth" in the rear seat of the patrol car.

Plaintiff has cited no law supporting his claim that the constitution or any statute entitles him to the use of a seat belt or to be free from the movement that he describes. Plaintiff also concedes the officer's lack of notice regarding his condition. In the absence of case law suggesting a claim, and in light of the fact that a reasonable officer could not have knowledge of plaintiff's condition, summary judgment must lie on these grounds as well.

### C. Deliberate Indifference to Plaintiff's Medical Condition

 Plaintiff also alleges that while he was in the care and custody of the police, the defendants failed to provide medical attention and failed to obtain a medical evaluation. Specifically, he argues that Colburn was obligated to take a medical history of the plaintiff before applying handcuffs.

 To find an Eighth Amendment violation, two requirements must be met. First, the alleged deprivation must be, objectively, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). The second requirement is that there be an "unnecessary and wanton infliction of pain." *Id.* at 297, 111 S.Ct. at 2324. In a prison context, that state of mind is one of "deliberate indifference" to an inmate's health or safety. *Id.* at 302–03, 111 S.Ct. at 2326. Deliberate indifference to a medical need could involve a denial or delay of inmates' access to medical care, interference with prescribed treatment, or the failure to respond to inmates' medical needs. *Haitian Ctrs. Council Inc. v. Sale,* 823 F.Supp. 1028, 1044 (E.D.N.Y.1993) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986); *Todaro v. Ward,* 565 F.2d 48, 52–3 (2d Cir.1977)). The Supreme Court has solidified the deliberate indifference standard in its recent opinion in *Farmer v. Brennan,*

—— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference now requires a showing that an official was "subjectively" aware of a substantial risk. Justice Souter, speaking for the majority, stated:

We reject [the] invitation to adopt an objective test for deliberate indifference. We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 10–11, —— U.S. at ——, 114 S.Ct. at 1979.

Thus, for plaintiff to bring forward an Eighth Amendment violation, he must show that there was a failure to prevent serious harm; namely the aggravation of his pre-existing spinal condition. Assuming, without deciding, that the harm to plaintiff's condition was serious, and that the failure to treat or examine his person represented a "serious deprivation," plaintiff still has the heavy burden of showing that the police officials involved had a "sufficiently culpable state of mind" when they withheld this necessary treatment. *See Wilson,* 501 U.S. at 302–03, 111 S.Ct. at 2326–27. Under *Farmer,* plaintiff must show that Colburn or his colleagues either knew of the harm or knew of the substantial risk of the harm to his condition, yet proceeded to deny him treatment or an evaluation in spite of this knowledge. Under the facts as he presents them, plaintiff can do neither.

It is undisputed that defendants were never aware of any harm to the plaintiff and were never aware of his pre-existing condition. It is also undisputed that they were never put on notice that plaintiff suffered from a condition that could potentially be aggravated by handcuffing or the other treatment that he was subjected to. Given their lack of awareness, it was impossible for Colburn or his colleagues to possess knowledge of a substantial risk to the plaintiff. Given their knowledge, it was reasonable for

them to refrain from providing the medical treatment that plaintiff argues he was entitled to. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer,* No. 92–7247 at 18, —— U.S. at ——, 114 S.Ct. at 1983.

■ As a pre-trial detainee, plaintiff's claim is not entirely analogous to the prison context. The due process clause requires officials to provide medical care to detainees who have been injured during the course of an arrest. *Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). The due process rights of persons in nonpunitive detention, such as pretrial detention, are greater than the Eighth Amendment protections afforded to convicted prisoners. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979) (pretrial detention); *Youngberg v. Romeo,* 457 U.S. 307, 321–22, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982) (involuntary commitment); *Rhyne v. Henderson County,* 973 F.2d 386, 391 (5th Cir.1992) (pretrial detainee); *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988) (pretrial detainee); *Haitian Ctrs.,* 823 F.Supp. at 1043 (nonpunitive detention). "Persons in nonpunitive detention have a right to 'reasonable medical care,' a standard demonstrably higher than the Eighth Amendment standard that protects prisoners: 'deliberate indifference to serious medical needs.'" *Haitian Ctrs.* 823 F.Supp. at 1043–44 (comparing *Estelle,* 429 U.S. 97, 97 S.Ct. 285 *with Rhyne,* 973 F.2d at 391).

Even under a "reasonable medical care" standard, the court finds that plaintiff has also failed to state a constitutional claim under Fourteenth Amendment standards for pre-trial detainees. There was no unreasonable or deliberately indifferent "denial" or "delay" in treatment. Plaintiff himself admits that he made no complaints about his medical condition before, during, or after his very brief detention. None of the defendants unreasonably, or with deliberate indifference, "interfered" with the process of treating plaintiff. Treatment was never prescribed by anyone, including plaintiff, at any time.

As for possible allegations of a "failure to respond" to plaintiff's condition, the court notes that it is impossible to respond to an invisible injury without notice.

Under an objective reasonableness standard, plaintiff is still required to show that a reasonable officer in the position of Colburn or his colleagues would have recognized and accommodated plaintiff's need for treatment or evaluation. Plaintiff has simply failed to raise any issue whatsoever as to how Colburn or any reasonable officer or person in his position could possibly have been aware of the his condition or the risks that he faced.

Though plaintiff says that defendants did not specifically ask if he had complaints relating to his transportation to the station, he does not deny that he was asked whether anything was wrong with him, and he does not deny his negative response to these questions. There was no physical evidence of pain or injury from which the officer, his colleagues, or any reasonable person could have detected plaintiff's alleged injury.

Additionally, even when the incident was coming to a close, the officers were not placed on notice of plaintiff's injury. Plaintiff was released within one hour of his initial arrest and was escorted from the police station by a friend. He did not seek immediate medical attention after his release and he never conferred with a physician until his regularly scheduled appointment three weeks after the incident.

Plaintiff claims that Colburn was required to bring plaintiff to a hospital for a medical evaluation prior to handcuffing him and transporting him to the police department. To suggest that Colburn was constitutionally required to provide such an evaluation is simply unfounded.

Plaintiff offers no additional facts about any of these issues from which a reasonable juror could conclude that Colburn, the New Hartford police, or a reasonable person would be on notice as to any medical condition on the part of plaintiff. He offers no evidence to suggest that any of the defendants were deliberately indifferent to his condition. He offers no evidence to suggest that any of the defendants denied or delayed his access to medical care, interfered with any treatment, or failed to respond to a serious medical need. As such, the court grants summary judgment on this issue.

### D. Unconstitutional Policy or Practice of the Police Department

Plaintiff alleges that Colburn's actions were taken pursuant to the following unconstitutional policies of the New Hartford police: denial of necessary medical attention to pretrial detainees; improper supervision of pre-trial detainees; and disregard for the proper training, supervision, and discipline of individual law enforcement officers.

A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Respondeat superior* or vicarious liability will not attach under § 1983. *Id.* at 694–95, 98 S.Ct. at 2037–38. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting)). Thus, the liability of the town and its police department is predicated on a causal link between the identified deficiency in the policy or practice and a constitutional violation.

Plaintiff's conclusory allegations of unconstitutional official policies or customs are insufficient. Plaintiff fails to link Colburn's actions to any constitutional violation. He also fails to link a police department policy or custom to any constitutional violation. There is no independent liability of the Town of New Hartford or its police department. The claim is without merit and is dismissed.

### E. Fifth Amendment Violations

Plaintiff alleges violations of the Fifth Amendment through the failure to give Miranda warnings and the failure to alert him of his right to refuse breath testing. Plain-

tiff does, however, admit that he consulted with an attorney, and that he consented to the breathalyzer test.

When police request a DWI suspect to submit to a blood alcohol test, such a request does not constitute custodial interrogation for purposes of the Fifth Amendment privilege against self-incrimination and *Miranda. South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983). Nor is the request to perform a field sobriety test the functional equivalent of a formal arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Furthermore, there is no constitutional right to confer with counsel before taking a breath test. *Moos v. Norton,* 789 F.Supp. 352 (D.Kan.1992); *see also Neville,* 459 U.S. at 559 n. 8, 103 S.Ct. at 920 n. 8. Admissions obtained prior to an arrest from a suspect who is stopped for speeding and intoxication will not be suppressed for claimed *Miranda* violations. *See e.g. Berkemer,* 468 U.S. at 420, 104 S.Ct. at 3138 (1984).

The incident in question involves a breathalyzer test. There was no custodial interrogation before or after the formal arrest. Plaintiff's Fifth Amendment claims are meritless and are dismissed.

### F. First Amendment Claims

The First Amendment is not implicated in any of plaintiffs claims and this contention is dismissed as frivolous.

### G. Pendent State Law Claims

Plaintiff also seeks compensatory and punitive damages based on state law claims of assault, battery, emotional distress, false arrest and detention, and malicious prosecution.[7]

"It is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well.'" *West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) (citations omitted) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). This decision is in keeping with the principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Robison v. Via,* 821 F.2d 913, 925 (2d Cir.1987).

Having determined that plaintiff's federal claims must be dismissed, and there being no diversity of citizenship between the parties, the court declines to take jurisdiction of the state law claims.

### IV. CONCLUSION

The mere existence of factual issues, unless they are genuinely disputed and material, will not defeat a motion for summary judgment. *Liberty Lobby, Inc.,* 477 U.S. at 242, 106 S.Ct. at 2505. In this action, the undisputed facts reveal ample probable cause for both the stop and arrest of plaintiff. Accepting plaintiff's recollection of the events, the handcuffing and placement of plaintiff in the squad car violated no recognized constitutional rights. Furthermore, it is patently reasonable to handcuff an intoxicated arrestee and to place him in the rear seat for transportation to a police station. Therefore, plaintiff fails to raise a valid claim of excessive force.

Finally, there is no constitutional right to medical treatment where there is no visible evidence of injury and there is a complete lack of notice to the defendants that plaintiff suffered any injury whatsoever.

Accordingly, it is

ORDERED, that defendants' motion for summary judgement is granted and the complaint is dismissed.

7. In a § 1983 action for malicious prosecution, as well as in a New York state tort action for malicious prosecution, the plaintiffs must establish four elements in order to prevail: "(1) that the defendants either commenced or continued a criminal proceeding against them; (2) the proceedings terminated in their favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was initiated out of actual malice." *Angel v. Kasson,* 581 F.Supp. 170, 175 n. 9 (N.D.N.Y.1983) (citing *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir. 1980)). Since no criminal proceedings have been terminated in plaintiff's favor, this claim must fail.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.