**Barry Lee VALLEN, Plaintiff–Appellant,**

v.

**Madelyn CONNELLY, Richard Miraglia, Lawrence Smith, Defendants–Appellees.**

No. 04–2523.

United States Court of Appeals, Second Circuit.

June 6, 2006.

Philip A. Irwin (Adam B. Siegel, on the brief), Covington & Burling, New York, NY, for Plaintiff–Appellant.

David Lawrence III, Assistant Solicitor General (Michael S. Belohlavek, Senior Counsel, Division of Appeals and Opinions, of counsel; Eliot Spitzer, Attorney General of the State of New York, on the brief),

New York, NY, for Defendants–Appellees Connelly and Miraglia.

Michael Frey, Barryville, NY, for Defendant–Appellee Smith.

PRESENT: Hon. JON O. NEWMAN, Hon. CHESTER J. STRAUB, Circuit Judges, and Hon. CHARLES L. BRIEANT, Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Barry Lee Vallen ("Vallen") appeals from a March 17, 2004, opinion of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) granting summary judgment to defendants. We assume that the parties are familiar with the facts, the procedural history, and the scope of the issues presented on appeal.

Vallen brought this action under 42 U.S.C. § 1983, alleging that defendants made false statements that caused him to be arrested unlawfully and recommitted to a mental institution. The District Court held that defendants, social workers involved in the treatment of Vallen's paranoid schizophrenia, had probable cause, or at least arguable probable cause (such that defendants are entitled to qualified immunity), to find that Vallen's mental illness had worsened to a point where it was "likely to result in serious harm to [Vallen] ... or others," see N.Y. Mental Hygiene Law § 9.45. The District Court cited two independent bases for this conclusion: (1) the circumstances leading up to Vallen's re-commitment; and (2) the fact that, shortly after Vallen's re-commitment, he was found by a competent court to be dangerously mentally ill, a circumstance that the District Court found automatically established probable cause.

We do not reach the District Court's second, alternative holding, because we agree with the District Court that the undisputed circumstances leading *up to* Vallen's re-commitment gave defendants at least arguable probable cause to conclude that he was dangerous and needed involuntary care. *See Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir.2003) (explaining doctrine of qualified immunity, by which officials are immune from liability if officials "of reasonable competence could disagree as to whether there was probable cause"). These circumstances, noted by the District Court, included the following: Vallen's past history of homicide (i.e., his 1984 murder of his parents, for which he was found not responsible because of mental illness) and reported threatening behavior toward relatives; Vallen's long history of on-and-off involuntary commitment, which clearly indicated a fluctuating degree of symptoms; recent concerns by Vallen's various treatment providers that he was not complying with the conditions under which he had been ordered released in January 1994 and that he was developing an increasingly resistant attitude; an anonymous tip that Vallen, aware that he was facing possible re-commitment, was armed and planned to resist an attempt to recommit him; and the timing of this anonymous tip, on the ten-year anniversary of his crime (a marker that, in many cases, can lead to severe decompensation). *Cf. Kerman v. City of New York,* 261 F.3d 229, 237 (2d Cir.2001) (defendants had arguable probable cause, though not probable cause, to seize Kerman as "present[ing] a risk of harm to himself or others" solely on the basis of an anonymous tip to that effect).

---

* The Honorable Charles L. Brieant, United States District Judge, Southern District of New York, sitting by designation.

Vallen's arguments to the contrary are unavailing. Vallen argues that the District Court conflated the question of Vallen's dangerousness with the question of his noncompliance. In the context of this case, Vallen's distinction is a thin one, and fails to take into account the cumulative nature of evidence about the extent of a person's mental illness. Although Vallen's resistance to treatment might not, *in itself,* have given rise to probable cause that he had become *dangerous,* it certainly (in the case of severe paranoid schizophrenia such as Vallen's) heightened the risk that he would become dangerous, especially at a vulnerable time such as the 10–year anniversary of his crime. Vallen also argues that the District Court overlooked the fact that, at various times before his re-commitment, his treatment team acknowledged that Vallen was not dangerous. This argument, again, ignores the inherent uncertainty and temporary nature of any psychiatric assessment. Given that any finding of dangerousness would have automatically triggered re-commitment, Vallen's care providers, including defendants, were understandably (and commendably) cautious about making such a finding. Nonetheless, once they learned of the anonymous police tip that Vallen was armed and planned to resist any attempts to hospitalize him, persons of reasonable competence could well conclude, as defendants did, that they had probable cause of conclude that Vallen had become dangerous.

Finally, Vallen's own contention that he was complying with his treatment program and conditions of release does not create a material issue of fact as to whether defendants had arguable probable cause. Even if Vallen was, as he claims, fully complying with his treatment program, defendants acted on the well-documented views of various providers that Vallen was resisting treatment. (Vallen does not dispute, moreover, that he requested multiple prescriptions, a circumstance that caused some of his providers to fear that he was obtaining extra medication.) Defendants, who were in the position of having to assess risk (an inherently uncertain subject), acted reasonably in crediting concerns by several providers, even if these concerns were premised on facts subject to dispute.[1] Probable cause—let alone arguable probable cause, which is all that we need determine—does not require that the person act on accurate information, but simply that the information be "reasonably trustworthy" and "sufficient to warrant a person of reasonable caution in the belief" that arrest (or in this case commitment) is necessary. *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quotation marks omitted).

We have considered Vallen's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is hereby **AFFIRMED.**

---

1. Our analysis, of course, would be different had Vallen provided any evidence of animus or incompetence on the part of his providers, as opposed to merely arguing with their assessment of his condition. *See Rodriguez v. City of New York,* 72 F.3d 1051 (2d Cir.1995).