### Gayle BRYANT, Plaintiff,

v.

New York County, Asst. District Attorney, Anne RUDMAN, City of New York, Det. Steven Natal, and Det. John Capobianco, Defendants.

94 Civ. 8248 (JGK).

United States District Court, S.D. New York.

June 24, 1996.

---

William Scott, Yonkers, New York, for plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York by David Drueding, Guy Cohen, Assistant Corporation Counsel, New York City Law Department, New York City, for defendants.

### OPINION AND ORDER

KOELTL, District Judge:

Plaintiff Gayle Bryant brings this action under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights under the United States Constitution. Plaintiff's claims arise from her arrest on December 7, 1993 attendant to the execution of a search warrant by detectives of the New York City Police Department at the home of the plaintiff and her husband, Reginald Bryant. (Am.Compl. ¶¶ 8–10.) Plaintiff asserts four claims, each in violation of her constitutional rights: (1) arrest without probable cause; (2) arrest on false criminal charges; (3) malicious prosecution on false criminal charges; and (4) false imprisonment. (Am.Compl. ¶¶ 16–22.) On September 29, 1995, the Court dismissed the Amended Complaint against the City of New York and New York County ADA Anne Rudman for failure to state a claim on which relief could be granted pursuant to those defendants' motions brought under Fed.R.Civ.P. 12(b)(6). The remaining defendants, Detectives Steven Natal and John Capobianco now move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the defendants' motion is granted and the Amended Complaint is dismissed.

## I.

The facts surrounding the arrest of the plaintiff, Gayle Bryant, are essentially undisputed.[1] In the early morning hours of December 7, 1993, officers and detectives of the New York City Police Department executed a search warrant at the home of Reginald and Gayle Bryant in Nanuet, New York. The search warrant was obtained on the basis of the affidavit of Detective Capobianco executed the day before. (*See* Declaration of Guy Cohen ("Cohen Decl. I"), dated Mar. 22, 1996, Ex. C.) The search warrant was obtained as part of Operation Bigshot, an extensive narcotics trafficking conspiracy investigation relating primarily to heroin but including cocaine and also involving other activities. (*See* Deposition of Det. John Capobianco ("Capobianco Dep."), dated Mar. 5, 1996, at 9; Cohen Decl. I, Ex. C. at ¶ 1.) Reginald Bryant, the plaintiff's husband, was a target of the investigation and was the object of surveillance conducted as part of Operation Bigshot. The Bryant home in Nanuet was one of the "target locations" to be searched pursuant to the search warrant. (*See* Cohen Decl. I, Ex. C. at ¶¶ 86–94.) There was also reason to believe that the targets of the investigation would act quickly to remove or destroy any evidence. (*See id.*, Ex. C at 1.)

When the officers arrived at the Bryant home on December 7, they took up positions at the front and rear of the residence. (Deposition of Det. Steven Natal ("Natal Dep."), dated Feb. 28, 1996, at 21–23.) Detective Natal was the officer in charge at the scene, (*id.* at 18), and Detective Capobianco was not present at the Bryant home on that day. One of the officers placed a telephone call to the Bryant's number to advise the people in the house that the police department was about to execute a search warrant. (*Id.* at 21.) Immediately after the call, a light went on in the Bryant's bedroom, and there was activity in the house, including movement in the bedroom and bathroom. (*Id.* at 21, 65.) The police entered the house approximately

one minute later. (*Id.* at 21–23, 26.) Detective Natal went to the bedroom and found Reginald Bryant lying on the bed. At this point the plaintiff was in the bathroom. Shortly after Detective Natal entered the bedroom, the plaintiff emerged from the bathroom. (*Id.* at 22–23.) Detective Natal then entered the bathroom and noticed a white residue on the toilet seat that appeared to be cocaine. (*Id.* at 31–32.) In the toilet tank he also found two vials also containing what appeared to be cocaine. (*Id.* at 32.)

Detective Natal then confronted the plaintiff and asked her if she had been disposing of drugs while she was in the bathroom. The plaintiff denied doing so. Detective Natal then arrested the plaintiff who was later charged with conspiracy in the second degree under Penal Law § 105.15, and that it was part of that conspiracy for Gayle Bryant to participate in a multi-county heroin trafficking network with her husband Reginald Bryant, and that in furtherance of the conspiracy one of the overt acts committed was that "[o]n December 7, 1993, the defendant[, Gayle Bryant,] attempted to dispose of evidence of narcotic trafficking, to wit, a chunk of cocaine, by attempting to flush said cocaine down the toilet in the defendant's home...." (Affirmation of William Scott, Esq. in Opp'n ("Scott Affirm."), dated Apr. 25, 1996, Ex. A.) Several months later, the charges against the plaintiff were dismissed. Reginald Bryant, who was also arrested at the scene by Detective Natal, was charged with and pleaded guilty to conspiracy in the second degree. He is presently serving a prison term of nine years to life imprisonment.

The defendants provide further factual allegations that are not disputed by the plaintiff. According to the defendants, just after the phone call was placed into the Bryant home, the officer positioned at the rear of the house told Detective Natal that he had seen movement in the rear of the house and had heard a toilet flush. (Natal Dep. at 65.)

---

1. The plaintiff elected to forego submitting any response to the Defendants' Statement Pursuant to Local Rule 3(g). Consequently, the facts set out in the defendants' Rule 3(g) submission are deemed admitted. *See DiCola v. SwissRe Hold-*

*ing (North America), Inc.,* 996 F.2d 30, 30–31 (2d Cir.1994); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 111 (2d Cir. 1992); *see also* Local Rule 3(g), Civil Rules of the Southern District of New York.

Detective Natal testified that he heard the toilet flush again when he arrived in the bedroom and found Reginald Bryant prone on the bed. (*Id.* at 22–23, 34.) Another police officer knocked on the door to the bathroom and the plaintiff was either pulled from or came out of the bathroom. (*Id.* at 22.)

The defendants also present evidence that the white substance from the toilet seat and the two vials found in the toilet tank were vouchered during an inventory of the Bryant home. (*See* Declaration of Guy Cohen ("Cohen Decl. II"), dated May 23, 1996; Ex. A.) The defendants also provide laboratory reports confirming that the white residue from the toilet seat and the white substance in the vials was cocaine. (*See* Natal Dep. at 30–33; Cohen Decl. II Ex. B.)

The plaintiff offered the following version of events in her deposition. Early in the morning of December 7, the plaintiff went to her bathroom. (Deposition of Gayle Bryant ("Bryant Dep."), at 70.) At some point, the plaintiff's husband entered the bathroom. The plaintiff, who was seated on the toilet, observed her husband come into the bathroom, remove the lid on the toilet tank, and appear to place something in or near the tank. (*Id.* at 84–86, 88–89.) The plaintiff explained that she had to get up off the toilet so her husband could remove the lid from the tank. (*Id.* at 89.) The plaintiff believed at the time that her husband was attempting to dispose of cocaine. (*Id.* at 76–77, 84, 86, 93.) Reginald Bryant remained in the bathroom for less than a minute, (Bryant Dep. at 82), and the plaintiff denies that he spoke to her at all while he was there.

After her husband left the bathroom, the plaintiff came out into the bedroom. (*Id.* at 91.) The plaintiff stated that she was immediately confronted by a man, presumably Detective Natal, who ran into the bathroom and said "[s]he is flushing a chunk of cocaine." (*Id.* at 71, 92.) The plaintiff stated that she denied having done so, repeatedly stating to the officer "I didn't do anything," (*id.* at 93), but at no time did the plaintiff inform any of the police officers at the scene that her husband had been in the bathroom or that he had placed anything in or near the toilet. (*Id.* at 93.)

The plaintiff argues in her papers that there is a lack of any evidence confirming the existence of a "chunk of cocaine," white powder from the toilet seat, or vials containing cocaine found in the toilet tank. (Scott Affirm. at 3.) The plaintiff also argues that there are no laboratory reports confirming that the substances alleged to be cocaine actually were cocaine. (*Id.* at 3.) These assertions appear in the affirmation in opposition to the motion for summary judgment rather than in an affidavit from someone with knowledge. Furthermore, these assertions are directly contradicted by the production of police vouchers and laboratory test results regarding the cocaine found in the Bryant's bathroom, all submitted with the defendants' reply papers. (*See* Cohen Decl. II Exs. A, B.)

Based on the undisputed facts in this case, even after resolving any inferences or ambiguities in the plaintiff's favor, the defendants are entitled to summary judgment dismissing the Amended Complaint.

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The

substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

A plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see Wyler v. Unites States*, 725 F.2d 156, 160 (2d Cir. 1983); *Cornett v. Sheldon*, 894 F.Supp. 715, 724 (S.D.N.Y.1995).

### III.

The defendants present three arguments in support of their motion. First, the defendants argue that the plaintiff cannot sustain a civil rights claim under § 1983 for arrest without probable cause, false arrest, malicious prosecution, or false imprisonment because the arresting officer, Detective Natal, had probable cause to arrest Gayle Bryant. Second, the defendants argue that there is no evidence that Detective Capobianco participated at all in the plaintiff's arrest and therefore liability under § 1983 cannot be established against him. Third, the defendants argue that the plaintiff cannot recover against Detective Natal because he is shielded by qualified immunity.

Each of these arguments are persuasive. Indeed, the second and third arguments are uncontested in the plaintiff's papers. With respect to the first argument, based on the undisputed facts, the plaintiff cannot prevail on her § 1983 claim because there was probable cause to arrest the plaintiff. Moreover, even if there were not, Detective Natal is entitled to qualified immunity for his actions, and Detective Capobianco is not even alleged to have acted in any way to contribute to or cause the arrest, imprisonment, or prosecution of the plaintiff.

### A.

■ There is no liability under § 1983 for false arrest, intentional arrest on false charges, malicious prosecution, or false imprisonment if the arresting officer had probable cause to arrest the plaintiff. *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir.1995); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995).[2] An officer has probable

---

2. The plaintiff nowhere explains how her malicious prosecution claim is cognizable as a violation of her constitutional rights or how it is properly asserted against Detective Natal. The plaintiff was arrested without a warrant based on probable cause. A claim for malicious prosecution in violation of the Fourth Amendment requires a seizure pursuant to legal process, and a warrantless arrest would not qualify as such legal process. *See generally Singer*, 63 F.3d at 116–17 ("Singer's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process.'"). Moreover, a warrantless depriva-

tion of liberty from the time of arrest to arraignment is chargeable, if at all, as a false arrest while malicious prosecution will typically implicate a post-arraignment deprivation of liberty. *See id.*, 63 F.3d at 117. While the Amended Complaint in this action describes the arrest of the plaintiff on December 7, 1993, and the release of the plaintiff on December 8, 1993, it does not describe any post-arraignment seizure of the plaintiff or deprivation of liberty and thus would not state a claim for malicious prosecution in violation of § 1983. The plaintiff's counsel explained at oral argument that the plaintiff was arraigned on December 8, 1993 and released that same day on her own recognizance. Coun-

cause to place a person under arrest when that officer has "'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)).

■ Based on the undisputed facts in the record, Detective Natal had probable cause to arrest Gayle Bryant after she emerged from the bathroom. Detective Natal had arrived at the Bryant home to execute a search warrant relating to a drug conspiracy for which Reginald Bryant was a suspect. After the occupants were alerted by the police that a search was imminent, Detective Natal was informed that there was a flurry of activity in the rear of the house and that a toilet had been flushed. After Detective Natal and the other officers entered the premises, Detective Natal observed the plaintiff emerge from the bathroom. He then saw what he believed was cocaine on the toilet seat, and he found two vials of what appeared to be cocaine in the toilet tank. He found these items in the very place where the plaintiff had been just a moment before. Although the plaintiff denied having disposed of any drugs, Detective Natal was not told that it was Reginald Bryant who had done so. Faced with this set of circumstances, Detective Natal had probable cause to believe Gayle Bryant had attempted to dispose of drugs while she was in the bathroom.

Nothing about the plaintiff's version of events changes the circumstances for purposes of determining whether there was probable cause to arrest Gayle Bryant. She does not dispute that she was alone in the bathroom when the police entered the house

and that when the police arrived her husband was outside the bathroom lying on the bed. She does not dispute that immediately after she came out of the bathroom Detective Natal found what appeared to be cocaine on the toilet seat and the two vials in the toilet tank. In fact, the plaintiff's deposition reveals how those items may have gotten there. But how the vials and the cocaine got there is irrelevant to the question of whether there was probable cause to arrest Gayle Bryant, particularly given that the plaintiff did not inform Detective Natal that her husband was responsible for what happened in the bathroom before the police arrived.

The plaintiff also does not challenge the statements in the defendants' Rule 3(g) statement that the police heard a toilet being flushed, once before they entered the house and once when Detective Natal arrived in the bedroom. In *United States v. Gomez,* 633 F.2d 999 (2d Cir.1980) (Timbers, J.), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981), a flushing toilet provided part of the basis for a finding of probable cause, resulting in two convictions for drug offenses being affirmed. The court explained that one of the critical facts supporting a finding of probable cause to arrest the defendants was that "by the time the arrest occurred [the police officer] had heard a considerable amount of commotion inside[:] the scurrying of feet, water running through the pipes and the flushing of a toilet. These are the classic sounds indicating destruction of evidence." *Id.,* 633 F.2d at 1008. In this case, a similar commotion followed the phone call into the Bryant home.

Therefore, based on the activity observed in the Bryant home just before the police entered, and the uncontested fact that Detective Natal heard the toilet flush yet again

---

sel also explained that the post-arraignment deprivation was the repeated court appearances required of the plaintiff until the charges were dropped six months later. None of these allegations, however, appear in the Amended Complaint.

These issues would not be a proper basis on which to grant summary judgment because they were not raised by the defendants on this motion. *See, e.g., Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir.1992) (reversing grant of summary judgment on grounds not raised by moving

party). Therefore, it is not necessary to decide whether there was a sufficient post-arraignment seizure in this case to implicate the Fourth Amendment. *See Singer,* 63 F.3d at 117. In any event, there is no explanation of the involvement of Detective Natal in the prosecution other than his participation in the felony complaint against the plaintiff. And, as explained below, Detective Natal had probable cause to arrest the plaintiff and he also had probable cause to charge the plaintiff with a felony. *See Lennon,* 66 F.3d at 425.

when he reached the bedroom, and given what was found in the bathroom that the plaintiff had occupied by herself, a reasonable officer would have had ample reason to believe that Gayle Bryant had attempted to dispose of evidence—an overt act in furtherance of concealing a drug trafficking conspiracy. Faced with these circumstances, Detective Natal had probable cause to arrest the plaintiff.[3] Detective Natal had probable cause to believe that the plaintiff had knowingly participated in the narcotics trafficking conspiracy by attempting to destroy evidence when she was aware that the police were entering the premises. *Compare United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir.1996) (overt acts of cocaine distribution not surplusage in indictment for heroin distribution).

The plaintiff argues that Detective Natal's credibility is at issue in this case. First, the plaintiff argues that no record made at the time of the arrest confirms that cocaine was found on the toilet seat or that vials were found in the toilet tank. The plaintiff also asserts that there are no laboratory reports identifying any substance found in the bathroom as cocaine. But these assertions are at odds with the evidence produced by the defendants, including an affidavit sworn by Detective Natal on December 16, 1993, attached to which is an inventory of the items seized from the Bryant home, including a copy of Property Clerk's Invoice 275598 which lists the powder residue from the toilet seat (Item # 5) and the two vials (Items # 1, # 2). (*See* Cohen Decl. II, Ex. A.) The defendants also produced laboratory reports for those items confirming that the substances found were in fact cocaine. (*Id.*, Ex. B.) The documentary evidence is corroborated by the deposition testimony of Detective Natal. (Natal Dep. at 31–33.)

On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed.R.Civ.P. 56(e); *see also Cornett*, 894 F.Supp. at 724 ("[T]he plaintiff, to avoid summary judgment, must show a genuine issue by presenting evidence that would be sufficient, if all reasonable inferences were drawn in [her] favor, to establish the existence of that element at trial." (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53)). Here, not only has the plaintiff merely made conclusory assertions through her attorney unsupported by specific facts, *see Wyler*, 725 F.2d at 160 ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on firsthand knowledge is not entitled to any weight."), the defendants have rebutted those assertions with affidavits, deposition testimony, and documentary evidence. Therefore, the plaintiff's first argument is insufficient to create a question of fact about the existence of cocaine on the toilet seat or vials containing cocaine.

The second argument the plaintiff advances is based on the reference in the charge against her to a "chunk of cocaine." The plaintiff argues that there is no evidence that a chunk of cocaine was ever recovered from the Bryant home. But Detective Natal explained at his deposition that he believed the plaintiff had attempted to flush cocaine down the toilet and he described the residue he found on the toilet seat as a "chunk of cocaine." (*See* Natal Dep. at 38–46.) Indeed, the plaintiff testified at her deposition that she heard Detective Natal use the term consistently when he said "[s]he is flushing a chunk of cocaine" upon examining the bathroom just after the plaintiff came out. (*Id.* at 71, 92.) And, as explained above, there is uncontroverted specific factual evidence in the record that the substance recovered from the toilet seat and vouchered into the possession of the police department was in fact

---

**3.** The plaintiff's fourth claim under § 1983 for false imprisonment can only be established if there was no probable cause to support the plaintiff's arrest and detention. *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Simpson v. Saroff*, 741 F.Supp 1073,

1077 (S.D.N.Y.1990) (Sweet, J.). As already discussed, Detective Natal had probable cause to arrest the plaintiff. For the same reasons that the claims for false arrest, intentional arrest on false charges, and malicious prosecution must fail, the claim for false imprisonment must fail as well.

cocaine. There is nothing about use of the phrase "chunk of cocaine" that raises any issue of fact for purposes of this motion. Therefore, the second of the plaintiff's arguments is unavailing.

Accordingly, after drawing all the inferences and resolving all the ambiguities in the plaintiff's favor, the evidence in the record viewed in the light most favorable to the plaintiff demonstrates that Detective Natal had probable cause to arrest Gayle Bryant as she emerged from her bathroom on the morning of December 7, 1993. Because there is no genuine issue of material fact requiring resolution at trial, and because a finding a probable cause is fatal to the plaintiff's claims under 42 U.S.C. § 1983, the defendants are entitled to summary judgment dismissing the Amended Complaint against them.

### B.

■ Alternatively, Detective Natal is entitled to summary judgment on the basis of qualified immunity, an argument the plaintiff does not contest. Qualified immunity bars civil damages suits against government officials acting in the performance of their official discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Lennon*, 66 F.3d at 420.

■ In this case, there is no dispute that the plaintiff's right to be free from arrest without probable cause, malicious prosecution, and false imprisonment were clearly established in December 1993. Nevertheless, "even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Malsh v. Austin*, 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) and *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)). Qualified immunity is an ef-

fective shield when government officers of reasonable competence could disagree on whether the conduct at issue was legal. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Whether qualified immunity applies may be decided as a matter of law, and "[b]ecause the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by qualified immunity." *Ying Jing Gan*, 996 F.2d at 532; *see Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992); *Lazoda v. Maggy*, 900 F.Supp. 596, 601 (N.D.N.Y.1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)).

■ In the context of claims for false arrest, intentional arrest on false charges, malicious prosecution, and false imprisonment, all of which are defeated by the existence of probable cause, qualified immunity is available if, based on the information available at the time, it was objectively reasonable to believe probable cause did exist for the plaintiff's arrest. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40; *Robison*, 821 F.2d at 921 ("[T]o defeat qualified immunity, the record must show it to be 'obvious that no reasonable competent officer would have concluded that a[n arrest] should issue.'"). Mistaken judgments concerning probable cause are protected so long as they are reasonable. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

■ In the circumstances of this case, it is undisputed that Detective Natal saw, heard, and was informed of specific activity—including a flushing toilet—after the police announced their presence and that he observed what appeared to be cocaine on the toilet in the bathroom from which he saw the plaintiff alone emerge. It is also undisputed that Detective Natal found two vials containing what appeared to be cocaine in the toilet tank. Even if Detective Natal was mistaken

in his evaluation of the undisputed facts presented to him, the doctrine of qualified immunity would undoubtedly apply because even if mistaken, his judgment that there was probable cause was a reasonable one. *See Lennon,* 66 F.3d at 421 ("[I]f the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.... [I]n qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.") As in *Lennon,* no reasonable jury could find that under the circumstances of this case it was objectively unreasonable for the arresting officer to believe that there was probable cause to arrest the plaintiff.

Accordingly, the defendants' motion for summary judgment is also granted with respect to the claims against Detective Natal based on qualified immunity.

### C.

Finally, Detective Capobianco is entitled to summary judgment because there is no evidence in the record that he participated personally in any of the acts relating to the plaintiff's arrest. The plaintiff does not contest this argument in her papers, and at oral argument on the motion plaintiff's counsel conceded that there was no evidence that Detective Capobianco was in any way involved in the plaintiff's arrest. The evidence in the record demonstrates only that Detective Capobianco's swore to the affidavit supporting the search warrant for the Bryant residence. As Detective Capobianco explained at his deposition, there was nothing in the affidavit, the search warrant, or indeed in any part of Operation Bigshot that made Gayle Bryant a suspect. (Capobianco Dep. at 9, 11, 14–15.) Detective Capobianco was not at the scene of the arrest on December 7, 1993, nor was he responsible in any way for the arrest of the plaintiff. In short, nothing Detective Capobianco did concerned Gayle Bryant at all, and the plaintiff has agreed to

dismiss her claims against Detective Capobianco.

Accordingly, based on the lack of any evidence submitted by the plaintiff to even suggest a factual question about the nature of Detective Capobianco's involvement in the plaintiff's arrest, and in light of the concession by the plaintiff's counsel at oral argument, it is clear that the plaintiff has no claim under § 1983 against Detective Capobianco. Therefore, with respect to the claims against him, the summary judgment motion is also granted on this basis.

### CONCLUSION

Accordingly, even after drawing all the inferences and resolving all the ambiguities in the plaintiff's favor, there is no genuine issue of material fact relating to probable cause for the plaintiff's arrest. Under the circumstances, there was probable cause to arrest the plaintiff, and therefore the plaintiff cannot prevail on her claims under 42 U.S.C. § 1983 as a matter of law. Furthermore, there are no factual disputes relating to the issue of Detective Natal's qualified immunity or the Detective Capobianco's lack of involvement in any aspect of the plaintiff's arrest—and these issues are not contested by the plaintiff on this motion.

Therefore, pursuant to Fed.R.Civ.P. 56, the defendants' motion for summary judgment is **granted** and the Amended Complaint against Detectives Natal and Capobianco is **dismissed.** There being no further defendants in this case, the Clerk is directed to enter final judgment dismissing the Amended Complaint.

**SO ORDERED.**