**Suzanne LEVY, Plaintiff,**

v.

**Joyce ALFANO, et al., Defendants.**

**No. 97 Civ. 5018(CM).**

United States District Court,
S.D. New York.

April 29, 1999.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Suzanne Levy, plaintiff.

Thomas J. Leonard, Law Offices of Thomas J. Leonard, White Plains, NY, for Joyce Alfano, individually defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

McMAHON, District Judge.

In this action, plaintiff Suzanne Levy, a self-proclaimed animal lover, seeks untold compensatory and punitive damages from her next-door neighbor, Joyce Alfano, the City of New Rochelle and certain of its employees, including the Mayor and a functionary in the office of the Building Official (i.e., Inspector). The underlying situation attracted considerable media attention in 1997, when it arose. During February 1997—National Feed the Birds Month—Plaintiff Levy purchased a tall[1] prefabricated bird feeder from Home Depot and put it in the yard between her home and that of Defendant Alfano. The feeder attracted numerous pesky pigeons and a number of squirrels, all of which left droppings in the area. Mrs. Alfano was not happy about this development. She complained to the Westchester County Board of Health. After a visit from the Board of Health, plaintiff constructed a "catch" platform so that the seed would not fall on the ground and attract rodents. This did not alleviate the problem in Alfano's eyes—it may have exacerbated it, as the birds and squirrels loved to feed on the rather large (3 feet by 4 feet) platform—

and so Alfano turned to certain New Rochelle City officials (defendants Mayor Idoni and Councilman Fosina, and the supervisor of defendant Pasqua, Building Official Goodman), who also happened to be her friends. Alfano asked everyone to "do something" about the "structure" that she believed was creating both a health hazard and an eyesore.

Goodman, the City Building Official, caused Pasqua, his subordinate and the Senior Construction Building Inspector to visit the site. Pasqua saw the feeder. He did not measure it, but observed that it was about six feet high. Pasqua therefore issued a Notice of Violation, first on April 2 (to the owner of the premises) and then again on April 7, 1997 (to Levy, the tenant). A criminal citation was issued on April 15, one day after Mayor Idoni, who had received a second complaint from Alfano, inquired about what was being done. Levy's alleged infraction was having erected or constructed a "structure" (the bird feeder) that was more than four feet high without first obtaining a building permit.

Clearly, Goodman and Pasqua overreacted to a situation that had arisen between two not-so-friendly neighbors—although their charge to enforce the provisions of the law "literally" left them little discretion. (New Rochelle City Code § 331-67.) Unfortunately, it was only the first in a series of overreactions. Local and national press coverage ridiculing the issuance of the summons abounded, and everyone got his or her back up. Levy declined to accept Mayor Idoni's offer of a settlement (three bags of bird seed and the construction of a small catching pan to replace the wooden platform) and went to trial. There, the Hon. Gail Rice, a sensible local judge, ruled solomonically. While noting that the bird feeder met the definition of a "structure" articulated by the New

---

1. From newspaper photographs submitted with the various motions for summary judgment, it is apparent that Mrs. Levy's bird feeder is not a birdbath that hovers close to the ground or an 18 inch by 18 inch "house" that hangs from a tree.

York Court of Appeals in *Lombardi v. Stout*, 80 N.Y.2d 290, 295, 590 N.Y.S.2d 55, 604 N.E.2d 117 (1992) ("a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner"), she concluded that City officials had failed to prove beyond a reasonable doubt that the New Rochelle City Council had so broad a definition in mind when.it passed the Building Code. Judge Rice also stated that, to the extent it might be deemed to apply to bird feeders, swing sets, and the like, the law was "vague" and hence unenforceable. *People v. Levy*, Decision Docket No. 029580, City Court of the City of New Rochelle, County of Westchester, June 4, 1997, attached as Exh. Q to Aff. of Christopher Cartier. The charges were dismissed.

Even this did not end the matter. Instead, someone (unidentified in the complaint, and there is no evidence it was any of the named defendants) issued Levy a summons because her grass Was too tall. Levy, not to be outdone, went to a White Plains law firm and filed the instant complaint. After endless discovery, defendants have moved for summary judgment.

The plaintiff's pleading contains several admitted errors. For example, it purports to allege a claim pursuant to 42 U.S.C. § 1985—the Ku Klux Klan Act—which requires proof of a conspiracy against an individual based on race, color or national origin. Plaintiff has withdrawn this claim, asserting (in a footnote to a brief filed AFTER defendants had been put to the expense of moving for summary judgment) that the citation to § 1985 was "erroneous" and that "No claim pursuant to Section 1985 is advanced in this case." I for one do not believe that plaintiff's counsel committed an innocent or typographical error here (if they did, they committed that same mistake any number of times), but I am pleased that they have seen the error of their ways and I dismiss any claim

against any defendant that purports to rely on § 1985.

Plaintiff's complaint also "erroneously" includes Councilman Fosina as a defendant. Plaintiff admits that this too was a mistake, albeit one not realized until after discovery. She offers to dismiss him as well. This Court accepts the offer on Mr. Fosina's behalf and the complaint is dismissed as against him, with prejudice and with costs to the dismissed defendant.

After reviewing the voluminous motion papers supporting and opposing the defendants' motions for summary judgment, I have concluded that several similar errors necessitate dismissal of the entire action. I therefore grant the motions for summary judgment.

### Defendant Alfano's Motion for Summary Judgment is Granted

Joyce Alfano moves for summary judgment, on the ground that she is not a State actor for purposes of 42 U.S.C. § 1983, and on the further ground that the only thing she is alleged to have done—complaining to City officials about Levy's bird feeder—is itself constitutionally protected activity that would be chilled if it subjected citizens to suit. Her motion is granted.

It is, of course, well settled that a private person who is not acting under color of State law may not be sued under Section 1983. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Lugar v. Edmondson Oil*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). It is equally settled that private citizens have the right to seek redress from public officials for real or fancied wrongs, and if the public official thereafter violates anybody's constitutional rights, the private person who activated that official is ordinarily not liable under the civil rights law. *Sluys v. Gribetz*, 842 F.Supp. 764, 767 (S.D.N.Y.1994); see also, *Aknin v. Phillips*, 404 F.Supp. 1150 (S.D.N.Y.1975). The only way to rope in a private citizen in such circumstances is to establish that the private person conspired

with State officials to violate the plaintiff's rights, or that there was either State compulsion or sufficient State involvement in the actions of the private person. *Mullarkey v. Borglum*, 323 F.Supp. 1218, 1224 (S.D.N.Y.1970). Here, plaintiff relies on the first prong of the *Mullarkey* test and asserts that the record discloses enough evidence of a conspiracy to get her to the jury. That—I fear I cannot resist the pun—is a lot of malarkey.

■ Plaintiff takes care to identify Mrs. Alfano as an employee of the New Rochelle Board of Education and as the friend and political supporter of Councilman Fosina, (who was erroneously sued by plaintiff's own admission) and Mayor Idoni, as well as a friend of Building Official Goodman's and a life-long friend of Inspector Pasqua. This, apparently, is supposed to give Alfano the aura of a State actor, even though she is in no way alleged to have been acting other than as a private citizen when she complained about the bird feeder. These facts also purport to entitle plaintiff to a jury trial, since a reasonable juror is supposed to be able to infer that Alfano's personal relationship with these men necessarily meant that they were in cahoots in hatching a plot to charge Levy with a Building Code violation.

But the fact that Alfano had friends in high places does not mean that she lost her First Amendment right to petition local officials to take action on her behalf. It certainly does not give rise to any inference that she plotted with defendants about what sort of nefarious action to take against Levy. There is no evidence in this record that Alfano did anything other than lodge a complaint. She lodged it forcefully, she lodged it repeatedly and she lodged it with people she thought would assist her. But there is nothing in this record to indicate that she lodged that complaint as part of a conspiracy to haul her neighbor in front of a criminal court. Indeed, when asked point blank what evidence she had of Alfano's involvement in the decision to prosecute her (other than the filing of the

complaint), plaintiff testified, "No, I have nothing to support that." Dep. of Suzanne Levy, p. 95, line 12.

Plaintiff would have this Court conclude that an issue of fact exists because Alfano was the first person to use the allegedly vague word "structure" in her complaint. From this, the jury is supposed to be able to infer a conspiracy, since the City Defendants "picked up on" Alfano's word and charged Levy with a Building Code violation relating to "structures."

In the absence of any evidence demonstrating that the various defendants met with each other to cook up Alfano's complaint, or that Alfano was acquainted with the intricacies of New Rochelle's Building Code (and there is none), I decline to accept plaintiff's tortured reasoning. The fact of the matter is, the bird feeder IS a "structure," under both the word's common meaning and the definition articulated by the New York Court of Appeals, our State's highest court. That it is not the sort of "structure" contemplated by the New Rochelle City Council when it adopted the Building Code (which is what the City Court found when it interpreted the terms "legislatively rather than judicially," see Opinion at 3) does not mean that it cannot be described as a "structure" in colloquial English. Plaintiff's papers are full of speculation, but there is no EVIDENCE in this record to indicate that Mrs. Alfano was being anything other than colloquial when she filed her complaint.

Mrs. Alfano is simply not a State actor. The complaint against her is dismissed, with prejudice and with costs to the dismissed defendant.

### The First Amendment Retaliation Claim Against Defendants Idoni and Pasqua is Dismissed

■ In a most creative portion of her complaint, plaintiff alleges that, as a result of the extensive press coverage her case received—most of it ridiculing the defendants—defendant Pasqua and his boss, Goodman, became so angry that they

caused someone (unnamed and, according to the evidence, not a party to this action, see Idoni Dep. at 59; Goodman Dep. at 147) to issue her a citation for having grass that exceeded the City-mandated height limit of eight inches. In other words, plaintiff alleges that she was retaliated against because the defendants were subjected to adverse press coverage. When pressed to identify which of her First Amendment rights this violated, plaintiff claims to have been suing to vindicate the First Amendment rights of the media, rather than her own rights. She purports to act under the "settled" doctrine of third party standing.

However, one of the things that is "settled" about third party standing is that it can rarely be invoked. The United States Supreme Court has narrowly limited the circumstances in which one party will be accorded standing to protect the rights of another. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 80, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). A plaintiff may not assert a claim on behalf of third parties unless she makes the following showing:

> First, that the third party has suffered an injury in fact;
>
> Second, that the plaintiff has a close relation to the third party such that the plaintiff will effectively represent that party's interests; and
>
> Third, that the third party is inhibited in its ability to protect itself.

*De Jesus–Keolamphu v. Village of Pelham Manor*, 999 F.Supp. 556, 567 (S.D.N.Y.1998). In this case, plaintiff has not satisfied any of the criteria. She has not demonstrated that the press suffered any injury from defendants' allegedly wrongful retaliation against her. She has not alleged that she has any sort of close relationship with the media that would permit her to stand in their stead. And she certainly has offered no evidence to overcome the strong inference—based on its repeated forays into this and other State and Federal courts—that the press can take care of itself.

Plaintiff's first claim for relief is dismissed as against all remaining defendants, with prejudice.

## Plaintiff's Claim for Malicious Prosecution Against Defendants Idoni and Pasqua is Dismissed

Defendants Idoni and Pasqua are also entitled to summary judgment dismissing plaintiff's claim that she was subjected to malicious prosecution in violation of her constitutional rights.

■ To make out a federal claim for malicious prosecution, a plaintiff must establish four elements: first, that the defendant or defendants commenced or continued a criminal proceeding against plaintiff; second, that the proceeding terminated in plaintiff's favor; third, that there was no probable cause to bring the proceeding; and fourth, that the defendant initiated the criminal proceeding out of malice. *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir.1994); *Fincher v. County of Westchester*, 979 F.Supp. 989, 999 (S.D.N.Y.1997).

■ With respect to Mayor Idoni, plaintiff has not satisfied the first of these criteria. It is undisputed that the Mayor did not swear out the criminal complaint or otherwise initiate the criminal action against plaintiff; Pasqua did. The only evidence I can find in this record against the Mayor is his April 14, 1997 memo to Building Official Goodman, in which he asks what is being done and whether legislation was needed to prevent this sort of situation. (Lovett Aff.Ex. 4)[2] Inquiring about a municipal department's endeavors does not constitute commencing a criminal action. There is no evidence in this record that the Mayor initiated or was in any way involved in the decision by the Buildings

---

**2.** It would have been helpful if the City Defendants' counsel had discussed the evidence against each of their clients, as they do not all stand in the same position with regard to plaintiff's malicious prosecution claim.

Department officials to cite Levy; indeed, as plaintiff herself notes, Mayor Idoni called the decision to prosecute Levy "ludicrous" (Lovett Aff.Ex. 10) and tried valiantly to resolve the matter. (Lovett Aff. Ex. 10.) Therefore, the second claim for relief is dismissed as against Idoni, with prejudice.

Pasqua, of course, did commence and continue a criminal prosecution against plaintiff, and that prosecution terminated in her favor. Thus, plaintiff has satisfied two of the four Bernard prongs for relief. However, Pasqua is entitled to dismissal of this claim either because he had probable cause to commence the proceeding or because he is entitled to qualified immunity for bringing it.

Section 111–8 of the New Rochelle City Code provides, in pertinent part, as follows:

> No person ... shall commence the erection, construction, enlargement, alteration removal, improvement, demolition, excavation or conversion of any building or structure or part thereof ... without first filing with the Building Official an application and obtaining a permit therefor....

Plaintiff argues that Pasqua knew that she had purchased the bird feeder, prefabricated, from Home Depot, and put it on, not in, her lawn. She further contends that Pasqua never took any measurement of the feeder. She also notes that the City Court judge found the feeder not to be a "structure" within the meaning of the City Code. Levy therefore concludes that he could not have had probable cause to prosecute her, in that he did not have reason to believe that she "constructed" anything; did not have reason to believe that it was sufficiently tall to warrant official attention,[3] and above all did not have any basis

for concluding that the feeder qualified as a "structure."

Pasqua admits the facts alleged by Levy, thereby negating a finding of disputed issues of material fact, but draws the opposite conclusion. He notes that "construction" is not the only basis for obtaining a building permit and suggests that plaintiff "erected" the feeder on her lot; he contends that he was able to establish that the feeder was more than four feet tall via visual inspection; and he argues that the building qualified as a "structure" under the pertinent definition (although he admits that he did not consult the City Code to check for definitions before he issued the Notice of Violation).

I conclude that Pasqua did have probable cause to issue the Notice of Violation. It is axiomatic that "probable cause" is determined with reference to the facts known to the citing officer at the time of the citation, not the results of the subsequent criminal prosecution. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993); *Bryant v. Rudman,* 933 F.Supp. 270, 274–275 (S.D.N.Y.1996). Here is what Pasqua knew when he initiated the matter. First, he knew that he had to enforce the code "literally." Second, he knew that the City Code forbids the "erecting" of buildings and structures. The normal and ordinary meaning of the verb "to erect" is "1. to raise (a building, for example); construct, 2. *to raise upright; set on end, lift up: erect a Christmas tree for decorating.*" The American Heritage Dictionary of the English Language, p 444 (emphasis added). Plaintiff unquestionably "erected" her bird feeder in the sense that she raised it upright and set it on end, as one would a Christmas

---

**3.** Plaintiff contends in her brief that the City's Building Code only "comes into play" if the item in issue has been put into the ground and exceeds the height of four feet. She derives this from Pasqua (Pasqua Dep. at 61) and Goodman's testimony (Goodman Dep. at 21, 34); however, no Code provisions confirming it have been brought to my attention. For purposes of this motion, I will accept Pasqua and Goodman's testimony as having some basis in law.

tree. Her repeated insistence that she did not construct the bird feeder because it was prefabricated, and that it was not in the ground because it was free-standing, do not alter that conclusion.[4]

Third, assuming it was at all relevant, Pasqua knew that the feeder was high enough to qualify as a "building or structure." It is not necessary that he have taken a measurement; he observed it and attested under oath that it was "about six feet high." From the photograph submitted to this Court by Mr. Lovett (Lovett Aff.Ex. 1), it is clear that the feeder is taller than a standard American sedan car, which means that it must be higher than four feet. From news photographs, also submitted by plaintiff (Lovett Aff.Ex. 11), the feeder is also taller than Mrs. Levy, an adult female, and there is no evidence that she is a person of unusually short stature. Plaintiff points to no legal or statutory requirement that a New Rochelle Building Inspector must confirm with a tape measure what he can see with his own eyes.

This leaves the question of whether Pasqua had knowledge or reasonably trustworthy information to conclude that the feeder was a "structure"—a question that cannot be resolved by resorting to the City Court Judge's opinion, written three months later. The City Code, as noted by Judge Rice, does not contain a definition of the word "structure." (It was for this very reason that Judge Rice found the statute to be vague, see Opinion at p. 3) Therefore, the question becomes what a reasonable person charged with enforcing the Code "literally" would have understood the word to mean. At the time the Notice of Violation was issued, the dictionary definition of the word "structure" was (and I venture to suggest still is) "1. A complex entity. 2. The configuration of elements, parts, or constituents in such an entity." American Heritage Dictionary, p. 1278. As noted

above, there was on the books at the time the Notice of Violation was issued an opinion of the New York Court of Appeals— the State's highest Court—defining the word "structure" within the meaning of the New York Labor Law as "any production or piece of work *artificially built up* or composed of parts joined together in some definite manner." *Lombardi v. Stout,* supra., 80 N.Y.2d at 295, 590 N.Y.S.2d 55, 604 N.E.2d 117. Under either of those definitions, plaintiff's bird feeder (prefabricated though it was), together with its subsequently-added platform, qualifies as a "structure." While Judge Rice found that The People failed to prove beyond a reasonable doubt that the City Council of New Rochelle had a bird feeder in mind when it used the word "structure" in the City Code—and that is the only thing she found—that does not negate the Building Inspector's conclusion, reached three months earlier, that the feeder literally qualified as a "structure" under the common understanding of that word.

■ Even if there were a question as to whether Pasqua had probable cause to cite plaintiff, he would still be entitled to dismissal of this charge under the doctrine of qualified immunity, which shields public officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ..." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, it can hardly be said that plaintiff's rights in this matter were "clearly established" by statute, as there was no statutory definition of the word "structure" that expressly excluded her bird feeder. Under the literal language of the law, Pasqua's action would appear to have been authorized. That without more entitles Pasqua to qualified immunity.

---

4. Plaintiff does not explain how she anchored this structure to the ground so as to prevent it from tipping over, but it stands to reason that she must have done so. It is clear from the photograph submitted by her own counsel (Lovett Aff.Ex. 1) that the bird feeder would not have remained upright if it had not been anchored to the ground in some matter.

Moreover, as long as it was "objectively reasonable" for a public official "to believe that h[is] acts did not violate" the plaintiff's rights—even if those rights were clearly established—the official is entitled to qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Rodriguez v. City of New York,* 72 F.3d 1051 (2d Cir. 1995). The fact that Pasqua gave a literal (extremely literal) reading to the statutory language—which he is required by law to do—makes Pasqua's actions "objectively reasonable," even though common sense would suggest that he overreacted by commencing a criminal proceeding against Levy.

■■■ As to Levy's second citation that her grass was too high, the evidence demonstrates only that Levy was issued a summons. A criminal proceeding was never instituted. Thus, there was no prosecution, malicious or otherwise. Moreover, even if the single act of issuing a summons were considered to satisfy the first element of a malicious prosecution action, *see Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228, 1250 (2d. Cir.1979) (holding that an Appearance Ticket, like a summons, commences a prosecution for purposes of a malicious prosecution action), the second element—that the proceeding terminated in Levy's favor—is not established. Here, there is no evidence of any proceeding beyond the summons. There was no determination made on the merits. The matter was dropped in the interest of justice. "Termination in the interest of justice does not produce a favorable termination basis for a malicious prosecution claim." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d. Cir.1995) (quoting *Hygh v. Jacobs,* 961 F.2d 359, 368 (2d Cir.1992)). Any malicious prosecution claim based on the summons issued for the high grass also fails.

The second claim for relief is dismissed as against both defendants, with prejudice.

## Plaintiff's Claim for Selective Prosecution is Dismissed

Defendants Idoni and Pasqua also seek summary judgment dismissing plaintiff's third claim for relief, for selective enforcement of the laws in violation of her rights. For the same reasons cited above, Idoni is entitled to summary judgment. Plaintiff offers no evidence that Idoni was involved in the commencement or continuation of the criminal proceeding against her. Pasqua claims that he is entitled to the same relief because plaintiff has not adduced any evidence to support an inference that she was selectively treated out of malice.[5]

That plaintiff was the first person against whom New Rochelle City Code Section 111–8 was enforced due to erection of a bird feeder is stipulated. This satisfies the first prong of the test for selective enforcement in violation of § 1983. *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992). The second prong of that test is malice. The evidence of Pasqua's malice cited by plaintiff is his (and other officials') friendship with complainant Alfano and the purported concession by Pasqua and his boss, Goodman, that "there was no factual basis for the prosecution." From this, she concludes that malice is "self-evident." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 22–23). But plaintiff's evidence of malice is nothing more than a restatement of her claim that there was no probable cause to charge her. Since I have already found that there was probable cause, I must necessarily conclude that her claim of malice fails.

Plaintiff then turns to her second citation, for having grass that was too high, and argues that this, too, constituted selective prosecution. However, as noted above, there was no prosecution; the law

---

**5.** Plaintiff does not allege that Pasqua was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of her constitutional rights (feeding the birds does not rise to that level).

was not enforced; the matter was dropped. Additionally, to the extent any claim purports to be asserted against Idoni on this issue, I dismiss it because there is a complete absence of any evidence that Idoni had anything to do with the issuance of the second citation. Similarly, no evidence before me points to Pasqua's involvement in this matter (Goodman Dep. at 147; Levy Dep. at 93–94.) Moreover, plaintiff has not offered any evidence that the grass statute was not enforced against others—except for her statement that the grass at City Hall, which she promptly measured, was taller than her own. Therefore, she has not met the first prong of the *FSK* Drug test for selective enforcement.

The third claim for relief is dismissed as against Pasqua and Idoni, with prejudice and with costs.

### Defendant's Motion for Summary Judgment Dismissing Plaintiff's Fourth Claim for Relief is Granted

Plaintiff has included in her complaint a fourth claim for relief, alleging that her Fourteenth Amendment due process rights were violated when she was prosecuted under a statute that was declared void for vagueness. She seeks damages pursuant to 42 U.S.C. § 1983. Defendants have moved for summary judgment on this claim as well.

The briefs of both parties are singularly unhelpful on this particular aspect of the motion. Defendants seem bent on proving that Judge Rice was wrong to announce (in what is arguably dictum) that the relevant portion of Section 111–8 of the Building Code is void for vagueness. Plaintiff counters with the *Rooker–Feldman* doctrine to urge that I cannot make a finding contrary to Judge Rice's. See *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). No one addresses the real issue, which is whether relief is available under § 1983 when the allegation of wrongdoing is prosecuting a

party under a void-for-vagueness statute. Possibly this is because no one has had the chutzpah to suggest such a theory of recovery before.

The first step in any action under § 1983 is for the court to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)). Plaintiff alleges that she was deprived of her due process rights by virtue of this prosecution. I cannot understand of what process she was deprived. She was accused of violating a law. She had a trial, at which she was represented by counsel of great competence. She had her day in court. She was vindicated. What more process could have been due her?

I presume that no one has cited any cases in which § 1983 has been invoked by successful defendants who were acquitted because the laws under which they were charged were unconstitutional because there are no such cases. I have found none. Prosecutors enjoy absolute immunity for initiating and pursuing criminal prosecutions, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and there is no exception to that rule for prosecutions commenced pursuant to unconstitutional laws. Moreover, I can think of no theory under which any of the particular individuals named in this case would be liable for such damages. "A public official is not liable under § 1983 for actions taken under the authority of unconstitutional statutes unless he knew or should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff...." *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 239 (9th Cir.1980) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 577, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)). "A public official has

no duty to anticipate unforeseeable constitutional developments." *O'Connor v. Donaldson*, 422 U.S. at 577, 95 S.Ct. 2486. Public officials like Pasqua merely enforce the laws passed by others. There is no indication in § 1983 that Congress intended to make such officials liable for the constitutional errors committed by the legislators who drafted and adopted the laws they enforce—or, for that matter, that they intended to make municipalities like New Rochelle answer in damages whenever its City Council passed an unconstitutionally vague law.

The fourth claim for relief is dismissed, with prejudice. As all claims against Idoni and Pasqua have been dismissed, they, too, are entitled to costs.

## The Request for Leave to Amend the Complaint to Add Goodman as a Defendant is Denied

Plaintiff would apparently like to substitute Goodman for Fosina as a defendant in this action. She may not do so.

■ First, plaintiff has failed to make a proper motion to amend; it is not enough to mention in a memorandum of law that one would like to amend the complaint. Second, pursuant to the pretrial scheduling order, any amendments to pleadings were to be filed by December 1, 1997. Plaintiff's request for leave was made on January 2, 1999.

■ Finally, there is no more merit to any of plaintiff's claims against Goodman than there is to her claims against Pasqua or Idoni. This court has discretion to deny leave to amend when the proposed amendment would likely be unproductive or without merit. *See Marchi v. Board of Coop. Educ. Services of Albany*, 173 F.3d 469 (2d Cir.1999) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). *See also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990). Were Goodman to be joined at this late date, I would simply grant summary judgment in his favor as well. Therefore, the amendment would be futile.

For all these reasons, leave to amend the complaint is denied.

## The Complaint is Dismissed as Against the City of New Rochelle

It is well settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official. *See Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Since I have dismissed the complaint against all the individual defendants, it must be dismissed as against New Rochelle, too.

I grant summary judgment in favor of New Rochelle on a second ground as well. While New Rochelle did not initially make a motion to dismiss as against it on *Monell* grounds, *see Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it appeared from my review of the record that such a motion might well lie. I raised the issue *sua sponte* at oral argument and directed the parties to submit letter briefs, which they did. I incorporate these briefs into the record and proceed to grant summary judgment dismissing the complaint against New Rochelle on *Monell* grounds.

■ It is well settled that a municipality may not be held liable for the actions of its officials and employees on a theory of respondeat superior, *see Batista v. Rodriguez*, 702 F.2d 393, 396 (2d Cir. 1983), and that a municipality may be found liable under Section 1983 only where it acts pursuant to a municipal custom or policy. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018; *Batista*, 702 F.2d at 397. The gravamen of plaintiff's complaint is that her prosecution was unique and discriminatory. Judge Rice so found when she deemed the matter one of first impression. Clearly, Levy's complaint alleges the antithesis of custom or policy. Therefore, no municipal liability lies under *Monell*. *See e.g. Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995); *Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir.1985).

Plaintiff would have this Court deem Goodman, who is Pasqua's boss and who authorized the summons, to be a policymaker. She urges that I not apply *Monell* on the ground that, in certain circumstances, a single decision by a municipal policymaker may subject the municipality to liability (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). However, Goodman is the furthest thing from a policymaker. He carries out policy made by others. He does so without an iota of discretion: City law requires him to interpret the language of the Code "literally." He did that in this case, with ludicrous consequences that can in no way be considered the policy of the City of New Rochelle. Perhaps the City ought to consider giving him a bit more discretion, so as to avoid unnecessary incidents like this one.

The complaint is dismissed against the City of New Rochelle, with prejudice and with costs to the dismissed defendant.

*Conclusion*

This unfortunate situation has consumed more costly lawyer's time, and more scarce judicial resources, than it ever should have. I can well understand Mrs. Levy's pique, but it is indeed unfortunate that she felt compelled to overreact in the same way the folks in New Rochelle did earlier. Once upon a time, it was popular to say, "Don't make a federal case out of it." In this instance, the wisdom of those words should be apparent.

This constitutes the decision and order of the court.